ADAMS, Justice.
Ward International Trucks, Inc., sued the Baldwin County Board of Education and Moyer Ford Company, alleging that the Board had violated the competitive bid law, § 41-16-50 et seq., in accepting Moyer Ford’s bid on 20 school buses, and seeking an injunction to prevent the Board from awarding the contract to Moyer Ford. The trial court entered a summary judgment for the defendants. (Although the procedure in the trial court was sometimes in the terms of a Rule 12(b)(6), Ala.R.Civ.P., motion to dismiss, we consider the effect of the court’s rulings to be a summary judgment for both defendants.) We reverse.
In 1992, the Board solicited bids for 20 school buses and the specifications for these buses included the following engine specification:
“Engine: Turbo charged in-line six cylinder with a minimum of 165 horsepower, wet sleeved, or approved equal.”
*573 Several competitors submitted bids; however, the only bids at issue in this appeal are those submitted by Ward International and Moyer Ford. Ward International submitted a bid of $34,983.12 per school bus for 170-horsepower, wet-sleeved engines; it also submitted an alternate bid for a wet-sleeved engine at $36,982.24, and a voluntary alternate bid for a non-sleeved engine at $34,-655.93 per school bus. The $34,983.12 bid from Ward was the low bid on the project; however, Moyer Ford submitted an alternate bid of $35,997.00 per school bus for non-sleeved engines.
According to the complaint, at the Board meeting the Board’s superintendent first recommended the acceptance of the bid from Ward International on the wet-sleeved engine and then changed his mind and recommended that the Moyer Ford bid on the non-sleeved engine be accepted. The matter was tabled until the next meeting of the Board, and at that meeting, the superintendent again recommended (on the advice of the Board’s attorney) that the Board accept Ward International’s bid. Despite this advice, the Board voted to accept Moyer Ford’s bid on the non-sleeved engine.
Ward then sued to enjoin the award of the contract on the buses to Moyer Ford. The trial court ruled for the defendants. The Board and Moyer Ford contend that the Board was vested with the discretion to determine whether the non-sleeved engine constituted “an approved equal” to the wet-sleeved engine. They point out that this Court has stated:
“ ‘[Ajuthorities should have discretion in determining who is the lowest responsible bidder. This discretion should not be interfered with by any court unless it is exercised arbitrarily or capriciously, or unless it is based upon a misconception of the law or upon ignorance through lack of inquiry or in violation of law or is the result of improper influence _ The single most important requirement of the Competitive Bid Law is the good faith of the officials charged in executing the requirements of the law.’
“White v. McDonald Ford Tractor Co., 287 Ala. 77, 86, 248 So.2d 121 (1971).”
Home Wrecker Service, Inc. v. City of Florence, 567 So.2d 1285, 1286-87 (Ala.1990).
In its complaint, Ward International alleged that it had submitted the lowest bid meeting the specifications set forth by the Board, and that the Board had been advised by its staff that the bid offered by Moyer Ford did not meet the specifications. Furthermore, the complaint alleged that the Board voted to award the contract to Moyer Ford despite the advice of its attorney to the contrary and despite the recommendation of the county superintendent to the contrary. Finally, Ward International contended that the award of the contract to Moyer Ford would violate of the competitive bid law.
The Board contends that the Moyer Ford non-sleeved engine was an “approved equal” and, in addition, it relies on the following clause in the invitation to bid:
“Baldwin County Board of Education reserves the right to exercise its option to favor persons, firms or corporations having a place of business in Baldwin County with a three percent (3%) preference over out-of-county firms.”
Moyer Ford operates its business in Baldwin County; Ward International does not have a place of business there. Although Moyer Ford’s bid on the non-sleeved engine was within 3% of Ward International’s bid on the wet-sleeved engine, the record provides no explanation as to why the non-sleeved engine bid offered by Ward International would not also be considered a bid on an “approved equal”; if it were, then it would have been the lowest bid, because Moyer Ford’s bid on its non-sleeved engine was not within 3% of Ward International’s bid on its non-sleeved engine.
In support of its motion for summary judgment, Moyer Ford offered the affidavit of James Croweroft, who stated that the wet-sleeved engine and the non-sleeved engine were equals as far as performance was concerned. In opposition to the Board’s motion to dismiss and Moyer Ford’s motion for summary judgment, Ward International offered the affidavit of its president, Bill Ward, wherein Ward stated that a non-sleeved engine was not the equal of a wet-sleeved en *574 gine but that the differences between the two did not relate to the performance of the engines; rather, he stated, the engines differed significantly as far as ease of maintenance was concerned. With regard to maintenance, Ward stated that the wet-sleeved engine was far superior to the non-sleeved engine because the wet-sleeved engine could be overhauled without removing it from the chassis of the bus.
We have examined the record, and we conclude that Ward International did state a claim upon which relief can be granted. Specifically, it alleged that the Board ignored the advice of its attorney and various staff members in accepting the bid of Moyer Ford and also that to award the contract to Moyer Ford would violate the Alabama bid law. At the very least, its complaint alleged that the Board acted arbitrarily in accepting the bid of Moyer Ford. Also, considering the affidavit of Bill Ward, we must conclude that Ward International presented substantial evidence in support of its claim. Therefore, the judgment of the trial court, whether taken as a dismissal or as a summary judgment, was erroneous. That judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and HOUSTON, STEAGALL and INGRAM, JJ., concur.